# EXHIBIT A

**VIRGINIA:**

## IN THE CIRCUIT COURT FOR THE CITY OF CHESAPEAKE

**SHEARON ANDERSON**

    Plaintiff

    v.

    Case No. CL  25-8561

**CONVERT SOLAR, LLC**
    *Serve Reg. Agent:*
    Dale Berning, Esq.
    817 Virginia Beach Blvd.
    Virginia Beach, VA 23451

    and

**GOODLEAP, LLC**
    *Serve Reg. Agent:*
    CT Corporation
    4701 Cox Rd Ste 285
    Glen Allen, VA 23060

    Defendants

### COMPLAINT

Plaintiff, Shearon Anderson, by and through counsel, alleges the following in support of her claims against Defendants, Convert Solar, LLC and GoodLeap, LLC:

### PARTIES

1.    Plaintiff, Shearon Anderson, is an elderly person and resides in the City of Chesapeake, Virginia.

2.    Defendant, Convert Solar, LLC (herein "Convert Solar") is a domestic limited liability company registered with the Virginia State Corporation Commission.

3.      Defendant, GoodLeap, LLC (herein "GoodLeap") is a foreign limited liability company registered with the Virginia State Corporation Commission to conduct business in the Commonwealth of Virginia.

## JURISDICTION AND VENUE

4.      Jurisdiction and Venue are proper pursuant to §8.01-261 of Code of Virginia in that Plaintiff resides in the City of Chesapeake Virginia and Defendants' conduct concerning the financing, installation, and operation of a residential solar energy system occurred in the City of Chesapeake, Virgina and therefore the Court's adjudication of the controversy is appropriate.

## FACTS

5.      Plaintiff avers the following allegations as the facts relevant to this matter.

*PULLING THE CON*

6.      A certain agent and representative of Convert Solar made an unsolicited visit to Plaintiff's home and engaged Plaintiff in a pitch concerning solely the installation and operation of a residential solar energy system (the "system") at Plaintiff's residence, a single-family detached home.

7.      At no point did the Convert Representative, ever discuss financing the system with Plaintiff or ever mention GoodLeap during the visit.

8.      At no point did the Convert Representative, ever discuss any monetary figures concerning the purchase or financing the purchase of the system.

9.      Plaintiff asked the Convert Representative point-blank "Who's going to pay for this because I'm on a fixed income?"

2

10.   In response, the Convert Representative represented to Plaintiff that the Plaintiff would own and operate the system as part of a Federal Government program and stated the following in support of said response:

   a. that once the City of Chesapeake and Dominion Energy approved the system, it could be installed at her home;

   b. that Plaintiff would be receiving a monetary "incentive" from the Federal Government each month that would vary according to how much excess energy the system produced; and

   c. that she should set aside the monthly incentives in a separate bank account to help defray the amount charged to her by Dominion Energy for the power she consumed, since she was on a fixed income and these incentive payments would be beneficial to her.

11.   On or about November 20, 2023, the Convert Representative presented Plaintiff the Convert Solar Contractor Agreement where Plaintiff signed the document as "owner." **(Exhibit "A").**

12.   When the Convert Representative presented said Agreement to Plaintiff for her signature, he do so on a electronic tablet device and presented to her in such a way to obscure or otherwise conceal any terms of the Agreement below the signature block where Plaintiff signed the Agreement.

13.   One relevant concealed provision indicated that the installation of the residential solar power system for $98,661.63 and the enforceability of said contract was contingent upon the lender's financing approval unless the Owner was making a non-financed purchase.

3

14.    Plaintiff was not making a non-financed purchase or any other kind of purchase of the system as she signed the Agreement solely based on the aforementioned representations by the Convert Representative.

15.    Convert installed or cause to be installed the system at Plaintiff's home.

*DISCOVERING THE CON*

16.    GoodLeap contacted Plaintiff in May, 2024 and indicated to Plaintiff that she missed her first payment.

17.    Plaintiff signed no contract with GoodLeap.

18.    Plaintiff, to her shock, had no prior knowledge of any loan, any first loan payment, or of GoodLeap, and requested proof that Plaintiff owed GoodLeap any payments.

19.    GoodLeap subsequently provided Plaintiff the Contract and loan related documents where she immediately discovered someone affixed a digital signature to the Contract. **(Exhibit "B").**

20.    Upon information and belief, on or about November 20, 2023, the agent and representative of Convert affixed a signature and all initials to the GoodLeap contract dated November 20, 2023 without the knowledge or authorization of Plaintiff.

21.    The first payment under the contract was due three months after the loan start date, April 23, 2024, per the Loan Closing Certificate **(Exhibit "C").**

22.    Plaintiff unsuccessfully persuaded GoodLeap to cease collection of any payments from her concerning any loan under the Contract.

23.    Since that initial conversation GoodLeap in May, 2024, GoodLeap is believed to have charged off the loan.

4

24.    Upon information and belief, GoodLeap deactivated or caused to be deactivated the system and not producing energy for anyone.

25.    Despite Plaintiff's emphatic denial that she ever signed the Contract, GoodLeap continues to falsely report to all major credit reporting agencies that Plaintiff is delinquent on the Contract despite Plaintiff disputing the reporting with said agencies and GoodLeap refused to correct the reporting.

26.    GoodLeap maintains a lien on Plaintiff's home for the purported amount of the loan payments under the contract, $166,680.88.

27.    Plaintiff is on a fixed income and would have never agreed to purchase or finance the purchase of the system had it been represented to her that she would be purchasing or financing the purchase of the system.

28.    Plaintiff was deceived by the willful and deceptive conduct committed on the part of Convert and was severely harmed financially as a result.

29.    Plaintiff seeks relief from the Court in the form of the following causes of action:

## COUNT I
## DECLARATORY JUDGMENT
## VA Code § 8.01-184
## GoodLeap Contract

30.    All previous allegations of facts are re-alleged in this count.

31.    Plaintiff did not sign the contract maintained as valid and enforceable by GoodLeap, but rather her name was signed digitally without her authorization and to her detriment financially.

32.    Plaintiff is also unable to sell her home without satisfaction of a purported loan contract that she never signed.

5

33.    As such, this matter is ripe for the Court to determine the validity and enforceability of the contract.

34.    Wherefore, Plaintiff is entitled to declaratory judgment that the contract is void ab nitio and the lien void likewise and order GoodLeap to release its lien; reasonable attorneys' fees; and grant any further relief the Court deems appropriate and just to award Plaintiff.

## COUNT II
## DECLARATORY JUDGMENT
## VA Code § 8.01-184
## Convert Contractor Agreement

35.    All previous allegations of facts are re-alleged in this count.

36.    Plaintiff did not sign the contract maintained as valid and enforceable by GoodLeap, but rather her name was signed digitally without her authorization and to her detriment financially.

37.    As such, this matter is ripe for the Court to determine the validity and enforceability of the contract.

38.    Wherefore, Plaintiff is entitled to declaratory judgment that the contract is void ab nitio and the lien void; reasonable attorneys' fees; and grant any further relief the Court deems appropriate and just to award Plaintiff.

## COUNT III
## VIRGINIA CONSUMER PROTECTION ACT
## VA Code § 59.1-200 *et seq.*
## GoodLeap Contract

39.    All previous allegations of facts are re-alleged in this count.

40.    Plaintiff relied on the representations of the Convert Solar representative that the solar energy system installed on her home would cost her no money.

41.     Plaintiff relied upon said representation and in connection with that representation, Convert committed Plaintiff to a loan contract to her financial detriment and in the amount of no less than $166,680.88.

42.     Moreover, the resulting lien has also detrimentally affected Plaintiff in that she cannot sell her home to realize the equity in the property due to the burdensome lien in the amount of no less than $166,680.88.

43.     As such, Plaintiff has incurred compensatory damages of no less than $166,680.88.

44.     Convert's conduct toward Plaintiff was particularly egregious and willful and is liable to Plaintiff for treble damages of no less than $500,042.64 as well as for reasonable attorneys' fees related to litigating this matter.

45.     Wherefore Plaintiff is entitled to compensatory damages of no less than $166,680.88; that such damages be trebled; reasonable attorneys' fees; and grant any further relief the Court deems appropriate and just to award Plaintiff.

## COUNT IIII
## VIRGINIA CONSUMER PROTECTION ACT
### VA Code § 59.1-200 *et seq.*
### Convert Agreement

46.     All previous allegations of facts are re-alleged in this count.

47.     Plaintiff relied on the representations of the Convert Representative that the solar energy system installed on her home would cost her no money.

48.     The Convert Representative also misrepresented the terms is the Convert Agreement by concealing the language concerning the purchasing and financing of the system when presented to her for signing.

7

49.     Plaintiff relied upon said representation and in connection with that representation Convert committed Plaintiff to the Convert Agreement, to her financial detriment and in the amount of no less than $98,661.63.

50.  .  As such, Plaintiff has incurred compensatory damages of no less than $98,661.63.  ·

51.     Convert's conduct toward Plaintiff was particularly egregious and willful and is liable to Plaintiff for treble damages of no less than $295,984.89 as well as for reasonable attorneys' fees related to litigating this matter.

52.     Wherefore Plaintiff is entitled to compensatory damages of no less than $295,984.89; that such damages be trebled; reasonable attorneys' fees; and grant any further relief the Court deems appropriate and just to award Plaintiff.

## COUNT V
## FAIR CREDIT REPORTING ACT
### 15 U.S.C. §§ 1681 *et seq.*
### GoodLeap Contract

53.     All previous allegations of facts are re-alleged in this count.

54.     Upon information and belief, GoodLeap has continued to erroneously report that Plaintiff is delinquent on payments due under the Contract which is inaccurate and negative information.

55.     Plaintiff has never made herself a party to the Contract and therefore has no obligation under the Contract.

56.     Plaintiff has maintained that she never signed the Contract since GoodLeap's initial call to her in May, 2024.

8

57.    Plaintiff also filed disputes with the major credit reporting agencies, nevertheless, GoodLeap falsely claimed that their credit reporting concerning Plaintiff was accurate. **(Exhibit "D")**.

58.    As such Plaintiff has suffered a severe drop in her credit score with the major credit reporting agencies.

59.    GoodLeap in falsely reporting and maintaining inaccurate and negative information concerning the purported payment delinquencies are violations under FCRA and each monthly report to each major credit reporting agency is a separate and distinct violation under the Act.

60.    GoodLeap is liable for any and all said and ongoing violations since May, 2024 (18 months since time of filing of this Complaint) a total of 36 violations and counting.

61.    Wherefore GoodLeap is liable for past violations in the aggregate statutory amount of $36,000 and for additional statutory amounts for ongoing violations to be determined at trial; reasonable attorneys' fees; and grant any further relief the Court deems appropriate and just to award Plaintiff.

### PRAYER FOR RELIEF

WHEREFORE Plaintiff prays the Court enter an order;

    a. That the GoodLeap Contract be declared void;

    b. That the Convert Agreement be declared void;

    c. That GoodLeap be ordered to release its lien against Plaintiff's home;

    d. For compensatory damages concerning the GoodLeap Contract of no less than $166,680.88 in favor Plaintiff and against Convert Solar;

    e. that such damages be trebled against Convert Solar;

f.  For compensatory damages concerning the Convert Solar Agreement of no less than $98,661.63 in favor Plaintiff and against Convert Solar;

g.  that such damages be trebled against Convert Solar;

h.  FCRA statutory violations of no less than $36,000 in favor Plaintiff and against GoodLeap;

i.  additional statutory amounts for ongoing FCRA violations to be determined at trial in favor Plaintiff and against GoodLeap;

j.  That GoodLeap be ordered to withdraw or otherwise correct the inaccurate and negative credit information it has reported or continues to report to the major credit reporting agencies concerning Plaintiff;

k.  reasonable attorneys' fees against Convert Solar under VCPA;

l.  reasonable attorneys' fees against GoodLeap under TILA; and

m.  granting such further relief as this Court deems appropriate.

**SHEARON ANDERSON**

By: _____
Of Counsel

Lenard Myers, II
VSB No. 79858
FORTRESS PROPRIETAS, P.C.
1876 Wells Fargo Center
440 Monticello Avenue
Norfolk, VA 23510-2571
P: 757.828.6685
F: 757.828.0671
LMYERS@FORTPROLAW.COM

**PLAINTIFF'S SWORN VERIFICATION**

I, Shearon Anderson, swear or affirm on penalty of perjury that I have read and

reviewed the foregoing Complaint and know the contents thereof and that the same are

true to the best of my knowledge, information and belief.

Shearon Anderson

COMMONWEALTH OF VIRGINIA
CITY OF NORFOLK, to-wit:

On _Dec 12, 2025_____, the foregoing was sworn or affirmed and

subscribed before me this day by Christopher Jones, whose identity was confirmed by

examination of a government-issued card with photo identification presented by said

individual.

ALIZABETH GRIMSHAW
NOTARY PUBLIC
REG. #00350714
COMMONWEALTH OF VIRGINIA
MY COMMISSION EXPIRES JUNE 30, 2029

_____
Notary Public

My commission expires: June 30, 2029

DocuSign Envelope ID: 80FE220A-D910-4099-8BB4-F3A4A2974B2F



# Convert Solar, LLC

5770 Thurston Ave, Suite 106,
Virginia Beach, VA 23455
Phone: 757-44-SOLAR
HIC# 2705151260

## CONTRACTOR AGREEMENT

THIS AGREEMENT made this ___November 20, 2023___ by and between Convert Solar hereinafter called the Contractor, and ___Shearon Anderson___ at address of ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓ hereinafter called the Owner.
WITNESSETH, that the Contractor and the Owner for the consideration named herein agree as follows:

### ARTICLE 1. SCOPE OF THE WORK

The Contractor shall furnish all the materials and perform all of the work described in the agreement. The contractor agrees to: **Install a 18.80kW solar system and all necessary operating equipment (pending any changes to system size during preconstruction engineering), obtain necessary permits and inspections, obtain interconnection approval from utility. If Owner needs to reroof after solar installation, Contractor will take solar down and reinstall on new roof for $199.00 per panel.**

**Equipment includes, but not limited to:**

**Modules:** __47 x Axitec AC-400MBT/108V__

**Inverters:** __5 x SolarEdge SE7600H-US [240V]__

**Storage (if applicable):** __0 X__

### ARTICLE 2. TIME OF COMPLETION

The work to be performed under this Contract shall commence and shall be completed on or before 180 days from date of signing. Time is of the essence.

### ARTICLE 3. THE CONTRACT PRICE

The Owner shall pay the Contractor for the material and labor to be performed under the Contract the sum of $ 98,661.63 (ninety-eight thousand, six hundred and sixty-one point six three Dollars. Final payment will be due and payable within 10 days of job completion. If payment is not received within 10 days of the date on which it is due, a Finance Charge at the rate of the lesser of (a) 1-1/2% per month (18% annual rate) or (b) maximum allowed by law, shall be charged and due and payable by Owner on any portion of the unpaid balance commencing on the date of the completion of contract until the date of payment, and the reasonable cost of collection; including attorney's fees. Contractor reserves the right to turn off and lock the solar system if full payment is not received. If financing is being used by owner, this contract is contingent on financing approval.

**EXHIBIT "A"**

DocuSign Envelope ID: 80FE220A-D910-4099-8BB4-F3A4A2974B2F

## ARTICLE 4. GENERAL PROVISIONS

1. All work shall be completed in a workmanship like manner and in accordance with the 2017 National Electrical Code.

2. To the extent required by law all work shall be performed by individuals duly licensed and authorized by law to perform said work.

3. Contractor may at its discretion engage subcontractors to perform work hereunder, provided Contractor shall fully pay said subcontractor and in all instances remain responsible for the proper completion of this Contract.

4. All change orders shall be in writing and signed by both Owner and Contractor.

5. Contractor warrants it is adequately insured for injury to its employees and others incurring loss or injury as a result of the acts of Contractor or its employees and subcontractors.

6. Contractor shall obtain all permits necessary for the work to be performed.

7. Contractor is not liable or responsible for any of its sales partner's, originator's, or subcontractors' offers beyond this agreement. This includes but is not limited to: proposals, promises, sales promotions, production numbers, system offset percentages, designs, licenses, insurance, employees.

8. Contractor itself does not guarantee production of the system. Production guarantees are specified on the solar panel spec sheet.

9. Contractor agrees to remove all debris and leave the premises in broom clean condition.

10. In the event the Owner fail to pay any periodic or installment payment due hereunder, Contractor may cease work without breach pending payment or resolution of any dispute.

11. Contractor shall not be liable for any delay due to circumstances beyond its control including strikes, casualty, customer schedule conflicts, or general unavailability of materials.

## ARTICLE 5. HOLD HARMLESS CLAUSE AND INDEMNIFICATION

Contractor agrees to indemnify and hold the Owner harmless against any and all claims, consequences or taxes, including penalties, fines or assessments, if any, which may arise from or relate to Contractor's performance of the Services under this Agreement, and/or the payments received under this Agreement. This provision shall survive the termination of this Agreement.

## ARTICLE 6. IMPOSSIBILITY CLAUSE

The performance of the Agreement is subject to any circumstance making it illegal or impossible to provide service, including acts of God, war, government regulations, disaster, strikes, civil disorder, or curtailment of transportation facilities. Neither a change of ownership or management of contractor or a change in management or Owner shall relieve either party of the responsibilities and obligations of this agreement.

## ARTICLE 7. ACCEPTANCE

Contractor and Owner have agreed to and have executed this agreement by their authorized representatives as of the Effective Date. By law, you may cancel this agreement, without any penalty or obligation, within three (3) business days of signing. See Section B. If you choose to cancel after three (3) business days you will be subject to pay for any associated project costs to date.

DocuSign Envelope ID: 80FE220A-D910-4090-8BB4-F3A4A2974B2F

## ARTICLE 8. PAYMENT

If Financing, the payment schedule is set forth in solar financing agreement.

If purchasing outright,

   **50% at contract signing**

   **40% at start of installation**

   **10% at Permission to Operate**

**NOTE:** If Owner chooses pay by credit card, the 3.5% credit card fee will be waived if paid within 3 days of any payment milestone. Fee will be reimbursed to the owner after payment. If the payment is made after 3 days of any milestone, the Owner must pay the 3.5% fee.

**Down Payment (if any): $0.00**

Signed this day of _____11/20/2023_____    by:

_____          _____
Owner                                                          Co-Owner (if any)

_____
Convert Solar – Sales Representative

DocuSign Envelope ID: 80FE220A-D910-4099-8BB4-F3A4A2974B2F

## SECTION A: WARRANTIES

(i) System, Workmanship, and Labor Extended Warranty

Under normal use and service conditions the System will be free from defects in workmanship for twenty-five (25) years, Labor included. The system will also be covered from defects in, or a breakdown of, materials or components, under the manufacturer's equipment warranties.

(a) Contractor does not cover improper use of the solar system, damage or loss caused by Owner's gross negligence, damage or loss caused by ball strikes or hail or trees, if Owner intentionally damages the system, damage caused by vermin, animals or pest, damage caused by acts of God, power surges, accidents or other acts beyond our reasonable control.

(ii) Roof Warranty

All roof penetrations we make for your System will be watertight. This warranty will run the first ten (10) years of the installation.

(iii) Damage Warranty

We will repair damage we cause to your Home, your belongings or your property or pay you for the damage we cause, as limited by Articles 4-6, including damages that result from our roof penetrations, for the first ten (10) years of the installation.

DocuSign Envelope ID: 80FE220A-D910-4099-8BB4-F3A4A2974B2F

Section B: Notice of Three-Day Right to Cancel

Date of Transaction:    11/20/2023

You, the buyer, have the right to cancel this contract within three business days. You may cancel by emailing, mailing, faxing, texting, or delivering a written notice to the contractor at the contractor's place of business by midnight of the third business day after you received a signed and dated copy of the contract that includes this notice. Include your name, your address, and the date you received the signed copy of the contract and this notice.

If you cancel, the contractor must return to you anything you paid within 10 days of receiving the notice of cancellation. For your part, you must make available to the contractor at your residence, in substantially as good condition as you received it, any goods delivered to you under this contract or sale. Or, you may, if you wish, comply with the contractor's instructions on how to return the goods at the contractor's expense and risk. If you do make the goods available to the contractor and the contractor does not pick them up within 20 days of the date of your notice of cancellation, you may keep them without any further obligation. If you fail to make the goods available to the contractor, or if you agree to return the goods to the contractor and fail to do so, then you remain liable for performance of all obligations under the contract.

To cancel this transaction, email, mail, or deliver a signed and dated copy of the Notice of Cancellation, or any other written notice to:
Contractor Name: Convert Solar LLC
Address: 5770 Thurston Ave, Suite 106
City: Virginia Beach
State: Virginia
Zip: 23455
No later than midnight three business days after the transaction date.
Code of Virginia Section § 59.1-21.3 requires that this form be signed and dated when the contract is signed.

**My signature below acknowledges receipt of this Notice of Three-Day Right to Cancel.**

Signature of Owner:

Date:    11/20/2023

DocuSign Envelope ID: 7C749BA7-4160-4DD0-9FC6-085BD690E6D7

THIS IS A COPY
The Authoritative Copy of this record is held at NA3.docus

## Itemization of Amount Financed

| Amount Financed | Amount given to you directly | Amount paid to others on your behalf |
|---|---|---|
| $98,662.00 | $0.00 | $98,662.00 to Convert Solar LLC |

The "Loan Start Date" is the date we send funds to your contractor. This date must be within 180 days of the initial application date.

This loan is assumable upon the sale of the property to a new owner, if the new homeowner qualifies under GoodLeap's underwriting guidelines and if the assumption is approved by GoodLeap. GoodLeap holds the right to deny the assumption, even if the new homeowner qualifies under GoodLeap's underwriting guidelines.

The Payment Schedule shown above assumes that you make no voluntary prepayments on your Loan. However, we have designed the Loan so that it will re-amortize at the end of the 18th month after your Loan Start Date. As a result, if you make all scheduled payments on time and also make sufficient voluntary prepayment(s) to reduce your total loan amount to the "Target Balance" by the "Target Balance Date" described in your Agreement, your payments from month 19 through the end of your term will be approximately equal to your initial monthly payment stated above.

Your Contractor may have opted to pay GoodLeap a fee in order for GoodLeap to offer you credit on the terms in this Agreement. Your purchase price set by the Contractor may include your Contractor's various costs, including this fee.

The Payment Schedule shown above assumes you make no changes to your Autopay payment option. For example, your 25 year loan of $98,662.00 with Autopay payments will have an interest rate/APR of 4.49% and an initial monthly payment of $398.40 (e) per month. Your 25 year loan of $98,662.00 without Autopay payments will have an interest rate/APR of 4.99% and an initial monthly payment of $420.37 (e) per month.

By signing below, you acknowledge that you have read and received a complete copy of this disclosure to keep for future reference before you signed your Agreement.

Borrower's Signature: _Sharon Anderson_    Date: _Nov 20, 2023_

GoodLeap, LLC: _Matt Dawson_

Matt Dawson, Co-Founder

**EXHIBIT "B"**

DocuSign Envelope ID: 7C749BA7-4160-4DD0-9FC6-085BD690E6D7

THIS IS A COPY
The Authoritative Copy of this record is held at NA3.docus

# goodleap

Loan Agreement

**Borrower:** Shearon Anderson

**Email:** ▮▮▮▮▮▮

**Phone:** ▮▮▮▮▮▮

**Loan Agreement Number:** ▮▮▮▮▮▮

**Residence Address:** ▮▮▮▮▮▮

**Date of the Agreement:** Nov 20, 2023

**GoodLeap Address:**
8781 Sierra College Blvd
Roseville, CA 95661

**GoodLeap Phone:** 1-877-290-9991

This document provides a summary of the terms and conditions of your loan

## Summary of Loan Terms and Payments

| Loan Term | Total Loan Amount | Initial Monthly Payment | Interest Rate/APR |
|---|---|---|---|
| 25 years | $98,662.00 | $398.40 (e) | 4.49% |

| Target Balance | Target Balance Date | Adjusted Monthly Payment |
|---|---|---|
| $69,334.06 (e) | Jul 19, 2025 (e) | $568.47 (e) |

(e) means estimate

* Adjusted monthly payment assumes that no prepayment was made and the Target Balance was not met by the Target Balance Date, and you do not change the Autopay payment election.

## System Information

**Installation Contractor:** Convert Solar LLC

Purchased Goods under this Loan Agreement will be detailed in your Home Improvement Agreement with your Contractor. By initialing below, you confirm receipt of such Home Improvement Agreement.

**Borrower's Initials** _SA_

## Loan Information

### Loan Start Date and First Payment Date

The "Loan Start Date" and "First Payment Date" will be finalized in your Loan Closing Certificate (Exhibit A), an example of which is fully incorporated herein. This certificate will be sent to you following disbursement of the loan proceeds.

The "Loan Start Date" will be the date that we disburse loan proceeds to your Contractor.

The "First Payment Date" will be set by us as follows: If the Loan Start Date is on the 1st through 28th, it will be on the corresponding date 3 months later (i.e., if June 15th, then September 15th); if the Loan Start Date is on the 29th through 31st, it will be on the first day of the first month following 90 days after the Loan Start Date (i.e., if June 30th, then October 1st). You are obligated to make all loan payments starting on your First Payment Date, regardless of the utility company granting permission to operate.

**Borrower's Initials** _SA_

DocuSign Envelope ID: 7C749BA7-4160-4DD0-9FC6-085BD690E6D7

THIS IS A COPY
The Authoritative Copy of this record is held at NA3 docus

Interest will accrue on the loan amounts actually disbursed, with the first accrual starting on the first calendar day following the Loan Start Date. Thus, the longer your First Payment Date is from the Loan Start Date, the more interest you will pay. If you wish to reduce the amount of interest that accrues, you can begin making payments earlier, at any time you choose after the Loan Start Date. However, interest will continue to accrue until all amounts owed under this Agreement are paid in full.

Your loan application was approved for a period of 180 days from the initial credit report date. If the Loan Start Date does not occur within 180 days from the initial credit report date, we will request a new credit report from the credit bureaus, to make sure that you continue to qualify for the same loan terms. This may impact your credit score.

### Tax Credit

You may be eligible for a federal solar investment tax credit. You acknowledge that eligibility for this tax credit is not guaranteed. In order to realize the benefits of the solar investment tax credit, you must have federal income liability that is at least equal to the value of the credit. We are not financially responsible for your receipt of any tax credits related to the Solar Equipment. We do not provide tax advice and nothing in this Loan Agreement is intended to be used as tax advice. To determine your eligibility for any federal solar investment tax credit, you should make an independent assessment or consult with your tax advisor.

### Target Balance Payments and Initial Monthly Payments

You are not required to make prepayments. However, you acknowledge that in order to avoid an increase in your Initial Monthly Payment, you must make one or more voluntary prepayments equal to 30% of your Total Loan Amount by your Target Balance Date. If you pay more than 30% of your Total Loan Amount, your monthly payments will be adjusted to a lower amount than the Initial Monthly Payment. If you do not make any prepayments, or if your prepayments are less than 30% of your Total Loan Amount, your monthly payments will be adjusted to a higher amount than the Initial Monthly Payment. You also understand that your Initial Monthly Payments will not be fully amortizing, but your new Monthly Payment after the Target Balance Date will be fully amortizing.

Borrower's Initials  Sl

### Security Agreement

You authorize us to file on your behalf any documentation, including but not limited to a copy of this Agreement, a UCC financing statement and/or a county fixture filing required to perfect our security interest in the Collateral to the extent required by applicable law, as outlined in Section 6 of this agreement.

### Loan Agreement

This agreement is legally binding starting on the effective date noted above. In this agreement, the words "you" and "your" refer to borrower, co-borrower and anyone you have been allowed to assign it to. The words "GoodLeap", "lender", "our" and "us" refer to GoodLeap, LLC or its assignees. This agreement replaces any prior agreements between you and us concerning the loan.

1. **INTRODUCTION.** The parties (each, a "Party" and collectively, "Parties") to this Agreement are you and GoodLeap, LLC ("GoodLeap"). Your solar installation contractor ("Contractor") has provided us with a copy of a signed home improvement agreement between you and the Contractor (the "Home Improvement Agreement") under which the Contractor will install solar panels, inverters, racking systems, wiring, electrical and mechanical connections, metering, monitoring and/or other distributed generation interconnect equipment ("Solar Equipment") and may, in addition or instead, install new roofs and related roofing materials, battery storage equipment, electrical vehicle power charging equipment, and thermostat equipment, and provide landscaping services to accommodate the solar system (together with the Solar Equipment, "Purchased Goods") at your home ("Residence") located at the Residence Address listed above.

2. **PROMISE TO PAY.** For value received, you promise to pay to GoodLeap and/or its assignees, the principal sum of the Total Loan Amount, with interest as set forth in Section 3 ("Interest and Payments") and any fees assessed in Section 4 ("Fees") below.

3. **INTEREST AND PAYMENTS.**

   a. **Payment Timing.** Your first Monthly Payment is due and payable on the First Payment Date (estimated on the Truth in Lending Disclosure and finalized on the Loan Closing Certificate).

DocuSign Envelope ID: 7C749BA7-4160-4DD0-9FC6-085BD690E6D7

THIS IS A COPY
The Authoritative Copy of this record is held at NA3.docus

**b. Payment Application.** If you make a payment that satisfies all current and past due installments, any additional payment will be allocated as set forth in the following sentence, but that additional payment will not change the due date for any payment that comes due in the future. To the extent permitted by applicable law, all payments or prepayments will be applied first to accrued interest, then to unpaid principal in the inverse order of maturity (last to first), and then to fees or costs payable to us under this Agreement.

**c. Accrual.** Interest will accrue on the loan amounts actually disbursed, with the first accrual starting on the first calendar day following the Loan Start Date. Interest will continue to accrue until all amounts owed under this Agreement are paid in full. Unpaid interest will not be added to the principal balance. To the extent permitted by applicable law, interest on your loan will be calculated on a 30/360 basis. For any partial month, interest accrues based on the actual number of days your loan is outstanding for such partial month. If you make your loan payments late, more interest will accrue, and the total finance charge you pay over the life of your loan will be higher. If you make your loan payments early, less interest will accrue, and the total finance charge you pay over the life of your loan will be less. Interest accrues between the Loan Start Date and your First Payment Date, and the longer the period of time between the Loan Start Date and your First Payment Date, the more interest will accrue. If you wish to reduce the amount of interest that accrues before your First Payment Date, you can begin making loan payments any time after the Loan Start Date. The amount of your final loan payment will change based on when you pay your monthly loan payments and whether you make any voluntary prepayments.

**d. Interest rate and Monthly Payment Amounts.** Your interest rate may vary depending upon only whether you cancel or add Autopay payments during the term of your loan, with a 0.50% interest rate discount for Autopay, or removal of that discount without Autopay. The monthly payments you must make, assuming you make all payments in full and on time and do not change your Autopay payment election, are set forth in your Loan Closing Certificate based upon your prior Autopay election. If there is a change to your Autopay status the new interest rate and accrual will be reflected in your monthly payment for the next applicable billing cycle.

**e. Target Balance / Target Balance Date / Initial Monthly Payment / New Monthly Payment:** After the Target Balance Date, your loan will re-amortize to reflect your outstanding principal balance on the Target Balance Date and your new Monthly Payments will be adjusted to an amount required to cause the full repayment of the Loan by the Maturity Date. You understand that your Initial Monthly Payments will not be fully amortizing, but your new Adjusted Monthly Payments after the Target Balance Date will be fully amortizing and will be calculated as follows:

 i. If you do not make any voluntary prepayments before the Target Balance Date, then your new Monthly Payment will be the Adjusted Monthly Payment.

 ii. If you make voluntary prepayments but such prepayments do not reduce your Total Loan Amount equal to or below the Target Balance by the Target Balance Date, then your new Monthly Payment will be an amount greater than your Initial Monthly Payment but less than the Adjusted Monthly Payment.

 iii. If you make voluntary prepayments and such prepayments reduce your Total Loan Amount equal to the Target Balance by the Target Balance Date, then your new Adjusted Monthly Payment will be approximately equal to your Initial Monthly Payment.

 iv. If you make voluntary prepayments to reduce your unpaid Total Loan Amount to less than the Target Balance by the Target Balance Date, then your new Adjusted Monthly Payment will be less than the Initial Monthly Payment reflected in the Loan Summary above for the remainder of the Term.

**f. Maturity Date.** Unless your loan is due earlier and payable as provided in this Agreement, your loan will mature on the Maturity Date. On the Maturity Date, you agree to pay in full any unpaid amounts payable under this Agreement.

**g. Payment Method.** You may pay by Autopay or check. If you chose to pay by Autopay in your application, you agree to complete and submit the Automatic Payment Authorization Form (the "Autopay Authorization"). If you chose to pay by check, include your Loan Agreement Number on your check and mail it to GoodLeap, PO BOX 4387, Portland, OR 97208. You may change your payment method by following the instructions in the Autopay Authorization.

**h. Prepayment.** You may prepay your loan at any time without penalty.

**4. FEES.** We will also charge you the following fees to the extent permitted by applicable law.

**a. Insufficient Funds Fee.** Unless prohibited by law, you will be charged a non-refundable fee of $15 for each failed electronic or check payment attempt. Your bank may assess its own fee in addition to the fee we assess.

DocuSign Envelope ID: 7C749BA7-4160-4DD0-9FC6-085BD690E6D7

THIS IS A COPY
The Authoritative Copy of this record is held at NA3.docus

b. **Fee for the Removal and Refiling of Our County Fixture Filing.** See Section 6 below for further information.

c. **Transfer Fee.** See Section 6 below for further information.

d. **Alternative Payment Convenience Fee.** Where permitted by law, if you request that we accept a payment via an alternative source such as a debit card, you may be charged a convenience fee, in an amount that we will disclose prior to your election to pay by such alternative method.

5. **ADDITIONAL OBLIGATIONS AND REPRESENTATIONS.**

a. **Collateral.** To the extent permissible by law, you irrevocably grant us a limited power of attorney with full power of substitution and re-substitution, to sign any documents and perform any acts, in your name and on your behalf, for the exclusive purpose of exercising our rights with respect to the Collateral under this Agreement. You also agree not to pledge, mortgage, encumber or otherwise permit the Collateral at any time to be subject to any lien or encumbrance that is superior to our security interest. See Section 6 below for further information on what constitutes eligible Collateral under this Agreement.

b. **Ownership Confirmation.** You represent and covenant that: (1) the Residence is your primary residential home dwelling or a second/vacation home and is not a rental property, or any business or commercial establishment or used as such; (2) you, or a trust controlled by you, are the fee simple owner of the Residence and the Collateral; (3) you are not, and will not, be in breach of your Home Improvement Agreement.

c. **Collateral Access.** You agree to provide us or our designees after receiving reasonable notice, with access to the Residence for the purposes of (1) inspecting the Purchased Goods until this Agreement terminates or, (2) in the case of a foreclosure on the Collateral, removing the Collateral from the Residence.

d. **Personal Property.** You and we both expressly intend that no portion of the Collateralized Goods will constitute a "fixture" attached to any real property, and that the Collateralized Goods will be removable personal property. You also agree not to take any action that might cause the Collateralized Goods to be treated as real property or as fixtures to real property. You agree that we may make a fixture filing, if we choose, provided that you and we agree that we may enforce rights in the Collateralized Goods under the Uniform Commercial Code and not under state real estate or mortgage law.

e. **Installation and Maintenance.** You will take all steps necessary to enable the installation and proper functioning of the Purchased Goods to be completed in accordance with the Home Improvement Agreement and to be maintained in accordance with any Operations and Maintenance Agreement. You agree to keep the Purchased Goods in good working order and in compliance with manufacturing specifications, the operating and maintenance manuals, warranty requirements provided by your Installation Contractor and, if applicable, your Operations and Maintenance Contractor, and all applicable law, and not to remove or modify the Purchased Goods without our prior written consent. You agree to maintain at all times an internet connection sufficient to ensure that monitoring data for the Solar Equipment can be fully transmitted, and consent to GoodLeap receiving such monitoring data, directly or through Contractor. You will be responsible for the structural integrity of the location where the Purchased Goods are installed, including structural or electrical modifications necessary to prepare your Residence for the Purchased Goods.

f. **Property Conditions.** You agree that GoodLeap is not responsible for any known or unknown Residence conditions. GoodLeap is not responsible and bears no liability for the malfunctioning of existing electrical equipment at the Residence, including but not limited to the main electrical service panel, any major electrical devices, or any other fuses or similar devices.

g. **Taxes.** You agree to pay, when due, your taxes, assessments, or other similar fees. If you do not pay these taxes or other fees when due, we may pay them on your behalf and add the amount we pay to the principal of our loan under this Agreement. In the event that we choose pay these taxes and/or other fees on your behalf, you agree to assist us in these efforts. Tax obligations that you may be required to pay may include: (1) the assessed value and the property tax assessments associated with the Purchased Goods calculated in the year this Agreement is signed; (2) transaction privilege taxes; and (3) any obligation to transfer tax credits or tax incentives of the Purchased Goods to any other person.

h. **Required Insurance.** To the extent permissible by law, you agree to maintain and pay any deductibles under a homeowners' insurance policy or equivalent insurance policy reasonably acceptable to us covering the Purchased Goods in an amount equal to the full replacement and installation cost of the Purchased Goods or the outstanding balance of the loan. If there is a payout under the property coverage for damage to the Purchased Goods, you agree to deliver those

DocuSign Envelope ID: 7C749BA7-4160-4DD0-9FC6-085BD690E6D7

THIS IS A COPY
The Authoritative Copy of this record is held at NA3.docusi

insurance proceeds to us, and we will apply those proceeds to the loan in the order of priority set forth in Section 3b. of this Agreement.

i. **Credit Inquiries.** You authorize us to obtain a credit report on you for any legal purpose in connection with this loan, including any update, extension of credit, review, or collection of this loan. Upon request, we will tell you the name and address of the credit bureau furnishing any report.

j. **Bankruptcy.** You represent that you are not contemplating bankruptcy and that you have not consulted with an attorney regarding bankruptcy in the past six months. Any communication with us required or permitted under the Federal Bankruptcy Code must be in writing, must include your loan number, and must be sent to us at the address for GoodLeap.

6. **GRANT OF SECURITY INTEREST IN COLLATERAL.** As consideration for the loan we are providing and to secure your obligations under this Agreement, you hereby grant to us a security interest in the following property (collectively "Collateral"):

a. all Purchased Goods excluding the roof and related roofing materials, if any (such Purchased Goods which excludes the roof and related roofing materials are referred to in this Agreement as "Collateralized Goods");

b. all accessions, attachments, accessories, tools, parts, supplies, replacements of and additions to the Collateralized Goods;

c. all proceeds from warranty claims related to the Collateralized Goods, the Home Improvement Agreement and any Operations and Maintenance Agreement;

d. all your rights, title, interests, and remedies under all agreements and other documentation relating to the Collateralized Goods (including, without limitation, the Home Improvement Agreement, and Operations and Maintenance Agreement);

e. all consideration received from the collection, sale or other disposition of the Collateralized Goods, including any payment received from any insurer arising from any loss, damage or destruction of any Collateralized Goods and any other payment received as a result of possessing any Collateralized Goods, or any other proceeds of Collateralized Goods.

You authorize us to file on your behalf any documentation, including but not limited to a copy of this Agreement, a UCC financing statement and a county fixture filing to perfect our security interest in the Collateralized Goods (in case a third party seeks to classify the panels as a fixture). If you are refinancing your home, upon request, we may agree to lift our county fixture filing, on the Solar Equipment for a limited period of time, provided we will be able to refile upon closing of the mortgage refinancing. A $200 fee will be assessed for the removal and refiling of our county fixture filing. If you sell your home, your loan must be paid in full to remove the UCC financing statement and county fixture filing. The actual costs incurred, if any, of removing a UCC financing statement or county fixture filing will be added to your payoff amount if you elect to pay your loan in full before the end of the loan term. Alternatively, this loan agreement may be transferred to the new home owner if the new home owner qualifies for the loan product as outlined in Section 12. A $300 transfer fee will be assessed for any transferred loan agreements.

7. **INDEMNIFICATION.** You agree to indemnify, defend and hold harmless us and our affiliates against any loss, liability, or damage that arises out of or relates to the transactions contemplated by this Agreement.

8. **DEFAULT.** You will be in default under this Agreement if any of the following occurs:

a. you fail to make any payment under this Agreement within fifteen (15) days of the date such payment is due;

b. you fail to perform any of your obligations under this Agreement and you fail to cure such failure to perform to our reasonable satisfaction within thirty (30) days after receiving notice from us of your failure to perform;

c. you terminate the Home Improvement Agreement without our consent after any loan proceeds have been disbursed;

d. you remove, modify, sell or otherwise transfer the Collateral without our approval;

e. any representation made by you on your loan application or this Agreement is false in any material respect when made;

f. any of the following occurs (each a "Bankruptcy Event"): (1) you make an application for the appointment of a receiver, trustee or custodian or a receiver, trustee or custodian is appointed for you or a majority of your assets; (2) you initiate or consent to any legal proceedings under the Bankruptcy Code, or equivalent law providing for the relief of debtors; (3) you make an assignment for the benefit of creditors; or (4) you have a petition in bankruptcy or similar relief of debtors filed against you, which is not withdrawn or discharged within thirty (30) days of being filed.

9. **REMEDIES.** Our remedies if you default on this Agreement include the following (to the fullest extent permitted by law):

a. **General.** In the event that you are in default under this Agreement, we may:

DocuSign Envelope ID: 7C749BA7-4160-4DD0-9FC6-085BD690E6D7

THIS IS A COPY
The Authoritative Copy of this record is held at NA3.docus

1. **Accelerate your Loan:** We would declare our loan immediately due and payable. This requires you to pay in full the unpaid principal amount of the loan, all accrued interest, and any other amounts due under this agreement. Your loan will become immediately due and payable to us under a Bankruptcy Event, regardless of whether or not we take any action.

2. **Provide a report to the credit bureaus detailing any late payments, missed payments or other defaults:** As required by law, you are hereby notified that a negative report reflecting on your credit record may be submitted to a credit reporting agency if you fail to fulfill the terms of this Agreement.

3. **Disable / Foreclose on the Collateral:** (and exercise any other rights with respect to the Collateral that we have under this Agreement or applicable law). This includes disabling the Equipment remotely or by entering upon your property; and/or entering upon your property and removing and taking possession of the Collateral and then selling, leasing, or otherwise disposing of the property.

4. **Pursue all remedies available under applicable law:** Including those of a secured creditor as permitted by applicable law.

5. **Stop making credit extensions under your loan:** Including ceasing any funding that may be pending on your loan as permitted by applicable law.

b. **Cost Reimbursement; Application of Proceeds.** Unless otherwise prohibited by state law, you are to promptly reimburse us, with interest, for all costs and expenses incurred in exercising our remedies related to this Agreement. If we choose to foreclose on the Collateral, we will apply any cash proceeds in the order of priority set forth in Section 3b of this Agreement and then to you or as a court may otherwise direct.

c. **Deficiency Judgment.** To the fullest extent permitted by law we may require that you pay any amounts payable by you under this Agreement less any proceeds that we realize from our exercise of our remedies under this Agreement.

TO THE FULLEST EXTENT PERMITTED BY LAW, YOU ARE PERSONALLY LIABLE FOR ALL AMOUNTS PAYABLE UNDER THIS AGREEMENT. WE ARE NOT REQUIRED TO FORECLOSE ON THE COLLATERAL BEFORE INITIATING PROCEEDINGS AGAINST YOU AND YOUR ASSETS.

Our rights under this Agreement are cumulative and we may exercise these rights at any time if you default. In the event that we exercise any of our rights or remedies under this Agreement, you will continue to be in default until such time that you pay to us all amounts due and payable to us and you have cured any and all defaults. OUR FAILURE TO TAKE ANY ACTION OR DELAY TAKING ANY ACTION RELATED TO YOUR DEFAULT, OR SIMILAR OR UNRELATED DEFAULT, DOES NOT WAIVE, OR IMPLY A WAIVER OF ANY OF OUR RIGHTS UNDER THIS AGREEMENT.

10. **TERMINATION.** We may terminate this Agreement during any period in which a Force Majeure Event prevents, limits or otherwise impairs our ability to perform our obligations under this Agreement. A Force Majeure Event means any circumstance beyond the Parties' reasonable control, including but not limited to any act of nature, war, terrorism, rebellion, labor dispute, work stoppage, civil disorders, act of government, or any other similar major cause. This Agreement will terminate automatically if the final loan disbursement does not occur within one hundred eighty (180) days of the date you most recently received credit approval by us to enter into this Agreement. No delay in our exercise of the foregoing termination rights shall constitute a waiver of our continuing rights to terminate the Agreement. In addition, you may terminate this Agreement at any time prior to our disbursement of the loan proceeds, by sending advance written notice to us. The terms of this Agreement that would, by their express nature, survive the termination of this Agreement will survive and be enforceable under this Agreement. Upon termination of this Agreement, our security interest in the Collateral will terminate.

11. **NOTICES AND OTHER INFORMATION** You agree to notify us if your name, email, or mailing address changes.

12. **ASSIGNMENT/REGISTERED FORM.** You may not assign or transfer your rights or obligations under this Agreement without our prior written consent. If you sell your home, the loan may be assumable, if the new homeowner qualifies under GoodLeap's underwriting guidelines and if the assumption is approved by GoodLeap. GoodLeap holds the right to deny the assumption even if the new homeowner qualifies under GoodLeap's underwriting guidelines. To apply for an assumption, you must notify GoodLeap in writing at least thirty (30) days in advance, using the contact information noted at the top of this Agreement. If the assumption is approved, the warranties and operations and maintenance service obligations (if any) pertaining to the Purchased Goods must be transferred to the new homeowner. You agree that we may assign or transfer all or a portion of this Agreement and the related documents to any third party or affiliate. GoodLeap or its agent, acting as a

DocuSign Envelope ID: 7C749BA7-4160-4DD0-9FC6-085BD690E6D7
THIS IS A COPY
The Authoritative Copy of this record is held at NA3.docus

non-fiduciary agent of the Borrower, shall maintain, a register within the meaning of U.S. Treasury Regulations Sections 5(f).103-1(c) on which it will record the names and addresses of each owner and their rights to principle and stated interest. Any transfer of all or a portion of a beneficial interest hereunder shall be recorded on such register. All parties to this agreement or their agents may treat each person or entity whose name is recorded in such register pursuant to the terms hereof as the applicable participant for all purposes under this Agreement. The register shall be available for inspection from time to time by any party hereto upon reasonable prior notice to GoodLeap or any of its agents. **YOU AUTHORIZE US TO PROVIDE TO A THIRD PARTY OR AFFILIATE ANY INFORMATION THAT THEY MAY REQUEST IN CONSIDERING OR IMPLEMENTING A PURCHASE OF OUR RIGHTS UNDER THIS AGREEMENT.** Arizona borrowers only: we will notify you if the entity responsible for allowing the assignment of your loan changes.

13. **LIMITATION OF LIABILITY. TO THE EXTENT PERMITTED BY APPLICABLE LAW, OUR LIABILITY TO YOU UNDER THIS AGREEMENT, IF ANY, SHALL BE LIMITED TO DIRECT, ACTUAL DAMAGES ONLY. YOU AGREE THAT IN NO EVENT SHALL EITHER PARTY BE LIABLE TO THE OTHER FOR CONSEQUENTIAL, INCIDENTAL, PUNITIVE, EXEMPLARY, SPECIAL OR INDIRECT DAMAGES.**

14. **GOVERNING LAW AND MISCELLANEOUS.**

**NOTICE: ANY HOLDER OF THIS CONSUMER CREDIT CONTRACT IS SUBJECT TO ALL CLAIMS AND DEFENSES WHICH THE DEBTOR COULD ASSERT AGAINST THE SELLER OF GOODS OR SERVICES OBTAINED WITH THE PROCEEDS HEREOF. RECOVERY HEREUNDER BY THE DEBTOR SHALL NOT EXCEED AMOUNTS PAID BY THE DEBTOR HEREUNDER.**

Except for the Arbitration agreement below, this Agreement shall be governed by federal law and, to the extent state law applies, the substantive laws of the state where the Residence is located. If any provision of this Agreement cannot be enforced, the rest of this Agreement will stay in effect. No amendment of this Agreement will be valid unless in writing and signed by both Lender and you (the Loan Closing Certificate shall not be deemed an amendment of this Agreement and is fully incorporated into this Agreement). This Agreement represents the entire agreement between the Parties regarding your loan. Our rights under this Agreement shall inure to the benefit of our successors and assigns, and your obligations under this Agreement shall be binding upon your heirs, personal representatives and permitted assigns.

15. **ARBITRATION AGREEMENT.**
All claims and disputes arising out of or relating to this Agreement (hereafter, "Dispute(s)") shall be resolved by binding arbitration on an individual basis. The arbitrator shall also decide any issues relating to the making, validity, enforcement, or scope of this arbitration agreement, arbitrability, defenses to arbitration including unconscionability, or the validity of the jury trial, class action or representative action waivers (collectively, "arbitrability" issues). **YOU HEREBY WAIVE ANY CONSTITUTIONAL AND STATUTORY RIGHTS TO GO TO COURT AND HAVE A TRIAL IN FRONT OF A JURY. FURTHER, UNLESS YOU OPT OUT OF ARBITRATION, YOU ALSO AGREE TO WAIVE ANY RIGHT TO BRING OR PARTICIPATE IN A CLASS OR REPRESENTATIVE ACTION IN COURT OR IN ARBITRATION.** The arbitrator shall have the authority to award any relief, including injunctive relief, which is available under applicable law. Each party shall bear the expense of its own counsel, experts, witnesses and preparation and presentation of proofs. However, the arbitrator may award you reasonable attorney's fees and costs if this is expressly authorized by applicable law. Upon request, we will pay a portion of the fees and expenses of the arbitrator and the administrative fees and expenses of the arbitration. The arbitrator shall issue a written award describing the essential findings supporting the award. All hearings in the arbitration shall take place within the federal judicial district where the Residence is located; the arbitrator's award shall be final and judgment on the arbitrator's award may be entered by the federal District Court. The arbitration shall be administered by JAMS pursuant to its Streamlined Arbitration Rules (the "Rules"). A copy of the JAMS Streamlined Arbitration Rules can be obtained from JAMS at https://www.jamsadr.com/rules-streamlined-arbitration or (800) 352-5267. The arbitrator shall be selected from the JAMS panel of neutrals and shall be a retired federal judge, a retired state appellate judge, or a retired state trial judge (in that order of preference). You agree that this agreement to arbitrate may be enforced by us or our affiliates, subsidiaries, or parents, and (g) each of their officers, directors, employees, and agents. This arbitration agreement is made pursuant to a transaction involving interstate commerce. The Federal Arbitration Act (9 U.S.C. §§1-16) (the "FAA") shall govern this agreement to arbitrate including all arbitrability issues. No state law respecting arbitrability issues shall govern this agreement to arbitrate. Subject to and without limiting the foregoing, federal law shall apply to all other issues that arise under federal law and applicable state law as set forth in Section 14 above shall apply to all other issues that arise under state law (without reference to a state's choice of law rules). **YOU MAY OPT OUT OF ARBITRATION BY SENDING US WRITTEN NOTICE WITHIN 15 DAYS OF SIGNING THE AGREEMENT STATING THAT YOU WISH TO "OPT OUT OF THE**

DocuSign Envelope ID: 7C749BA7-4160-4DD0-9FC6-085BD690E6D7

THIS IS A COPY
The Authoritative Copy of this record is held at NA3 docus

AGREEMENT TO ARBITRATE DISPUTES." THE OPT-OUT NOTICE SHOULD BE SENT TO THE FOLLOWING ADDRESS: GoodLeap, 8781 Sierra College Blvd., Roseville, CA 95661. If you do not opt out, but any part or parts of your agreement to arbitrate are unenforceable then GoodLeap and you agree that such specific part or parts shall be of no force or effect and shall be severed, but the remainder of this agreement to arbitrate shall continue in full force and effect. If, however, the entire agreement to arbitrate or your waiver of the right to participate in class, representative or to arbitrate injunctive relief claims is unenforceable then the agreement to arbitrate shall be of no force or effect.

JUDICIAL REFERENCE FOR CALIFORNIA BORROWERS. IF THE RESIDENCE IS IN CALIFORNIA AND YOU OPT-OUT OF ARBITRATION, GOODLEAP AND YOU AGREE THAT ANY DISPUTES WILL BE RESOLVED IN THE SUPERIOR COURT FOR THE COUNTY IN A GENERAL REFERENCE PURSUANT TO THE CALIFORNIA CODE OF CIVIL PROCEDURE ("CCP"), § 638(a). YOU ACKNOWLEDGE AND AGREE THAT IN A REFERENCE ACTION, ANY DISPUTE WILL BE HEARD BY A REFEREE AND NOT BY A SUPERIOR COURT JUDGE AND JURY AND HEREBY WAIVES HIS CONSTITUTIONAL AND STATUTORY RIGHTS TO HAVE A TRIAL IN FRONT OF A JUDGE AND JURY. The Referee shall be appointed pursuant to CCP § 640 in the absence of agreement on the selection. The Referee shall have the same qualifications as the arbitrator. Upon request, GoodLeap will pay your portion of the fees and expenses of the Referee.

NOTWITHSTANDING ANYTHING TO THE CONTRARY HEREIN, IF THE RESIDENCE IS IN CALIFORNIA AND YOU DO NOT OPT-OUT OF ARBITRATION, YOU MAY SEEK PUBLIC INJUNCTIVE RELIEF IN ARBITRATION TO THE EXTENT PERMITTED BY APPLICABLE LAW. IF, HOWEVER, ARBITRATION IS UNENFORCEABLE, IN WHOLE OR IN PART, THEN GOODLEAP AND YOU AGREE THAT SUCH DISPUTES WILL BE RESOLVED IN THE SUPERIOR COURT FOR THE COUNTY IN A GENERAL REFERENCE PURSUANT TO THE CALIFORNIA CODE OF CIVIL PROCEDURE ("CCP"), § 638(a). YOU ACKNOWLEDGE AND AGREE THAT IN A REFERENCE ACTION, ANY DISPUTE WILL BE HEARD BY A REFEREE AND NOT BY A SUPERIOR COURT JUDGE AND JURY AND HEREBY WAIVES HIS CONSTITUTIONAL AND STATUTORY RIGHTS TO HAVE A TRIAL IN FRONT OF A JUDGE AND JURY. The Referee shall be appointed pursuant to CCP § 640 in the absence of agreement on the selection. The Referee shall have the same qualifications as the arbitrator. Upon request, GoodLeap will pay your portion of the fees and expenses of either the arbitrator or the Referee, as the case may be, any your portion of any administrative fee that the arbitrator, referee or JAMS may require.

Nothing in Section 15 shall prejudice the right of either party to: (a) seek and obtain such provisional relief or remedies as shall otherwise be available judicially pending appointment of the arbitrator or referee (b) bring their Dispute in small claims court on an individual basis, (c) exercise such self-help remedies as are authorized by law or contract, or (d) pursue judicial foreclosure as set forth in Section 9.

BY PLACING YOUR INITIALS BELOW THIS NOTICE YOU CERTIFY THAT YOU HAVE READ AND AGREE TO SECTION 15 IN ITS ENTIRETY.

Borrower's Initials [ SA ]

GoodLeap, LLC    *Matt Dawson*

Matt Dawson, Co-Founder

16. **ECOA NOTICE.** The Federal Equal Credit Opportunity Act prohibits creditors from discriminating against credit applicants on the basis of race, color, religion, national origin, sex, marital status, or age (providing that the applicant has the capacity to enter into a binding contract); because all or part of the applicant's income derives from any public assistance program; or because the applicant has in good faith exercised any right under the Consumer Credit Protection Act. The Federal Agency that administers compliance with this law concerning this creditor is: The Federal Trade Commission, Consumer Response Center, Washington, DC 20580. Phone: 1-877-382-4357.

17. **BUYER'S RIGHT TO CANCEL.** YOU, THE BUYER, MAY CANCEL THIS TRANSACTION AT ANY TIME PRIOR TO MIDNIGHT OF THE THIRD BUSINESS DAY AFTER THE DATE OF THIS TRANSACTION. SEE THE ATTACHED NOTICE OF CANCELLATION FORM FOR AN EXPLANATION OF THIS RIGHT.

18. **STATE-SPECIFIC DISCLOSURES.**
    **VIRGINIA BORROWERS**

DocuSign Envelope ID: 7C749BA7-4160-4DD0-9FC6-085BD690E6D7

THIS IS A COPY
The Authoritative Copy of this record is held at NA3.docusi

**BUYER'S RIGHT TO CANCEL** – If this agreement was solicited at a residence and you do not want the goods or services, you, the buyer, may cancel this transaction at any time prior to midnight of the third business day after the date of this transaction. See the attached notice of cancellation form for an explanation of this right.

By signing below I/we confirm that I/we have read and agree to the terms in the Loan Agreement

Borrower's Signature:  ⸻DocuSigned by:⸻ *Sharon Anderson* ⸻9802BD45C97D406⸻    Date:  Nov 20, 2023

GoodLeap, LLC  *Matt Dawson*

Matt Dawson, Co-Founder

COPY VIEW

DocuSign Envelope ID: 7C749BA7-4160-4DD0-9FC6-085BD690E6D7

THIS IS A COPY
The Authoritative Copy of this record is held at NA3 docus

# goodleap

Exhibit A: Example of Loan Closing Certificate

**Borrower:**

**Email:**

**Phone:**

**Loan Agreement Number:**

**Product Type:**

**Residence Address ("Home"):**

This Loan Closing Certificate confirms that your Loan with GoodLeap has been funded and the following terms have been set:

## Loan Summary

| Loan Start Date | First Payment Date | Recurring Payment Date | Maturity Date |
|---|---|---|---|

## Loan Terms

| Loan Term | Total Loan Amount | Initial Monthly Payment* | Interest Rate / APR |
|---|---|---|---|

| Target Balance | Target Balance Date | Adjusted Monthly Payment* | |
|---|---|---|---|

*Adjusted monthly payment assumes that no prepayment was made and the Target Balance was not met by the Target Balance Date, and you do not change the Autopay payment election.

Your interest rate/APR and monthly payments may vary depending upon whether you cancel or add Autopay payments during the term of the loan.

## Solar/Storage System Description

**Installation Contractor:**

**\*Home Improvement Agreement Number:**

*Purchased Goods under this Loan Agreement will be detailed in your Home Improvement Agreement

COPY VIEW

DocuSign Envelope ID: 7C749BA7-4160-4DD0-9FC6-085BD690E6D7



THIS IS A COPY
The Authoritative Copy of this record is held at NA3.docusi

Credit Score Disclosure

**H-4. Model form for credit score disclosure exception for loans not secured by residential real property**

**GoodLeap**

**Your Credit Score and the Price You Pay for Credit**

**Your Credit Score**

| | |
|---|---|
| Your Credit Score | **Source:** equifax<br>**Date:** Nov 20, 2023<br>**725** |

**Understanding Your Credit Score**

| | |
|---|---|
| What you should know about credit scores | Your credit score is a number that reflects the information in your credit report.<br><br>Your credit report is a record of your credit history. It includes information about whether you pay your bills on time and how much you owe to creditors.<br><br>Your credit score can change, depending on how your credit history changes. |
| How we use your credit score | Your credit score can affect whether you can get a loan and how much you will have to pay for that loan. |
| The range of scores | Scores can range from a low of 300 to a high of 850.<br><br>Generally, the higher your score, the more likely you are to be offered better credit terms. |
| How your score compares to the scores of other consumers | Your credit score ranks higher than 46 percent of U.S. consumers. |

DocuSign Envelope ID: 7C749BA7-4160-4DD0-9FC6-085BD690E6D7

THIS IS A COPY
The Authoritative Copy of this record is held at NA3.docus

### Checking Your Credit Report

| | |
|---|---|
| What if there are mistakes in your credit report? | You have a right to dispute any inaccurate information in your credit report. If you find mistakes on your credit report, contact the consumer reporting agency. |
| | It is a good idea to check your credit report to make sure the information it contains is accurate. |
| How can you obtain a copy of your credit report? | Under federal law, you have the right to obtain a free copy of your credit report from each of the nationwide consumer reporting agencies once a year. |

To order your free annual credit report –

| | |
|---|---|
| By telephone: | Call toll-free: 1-877-322-8228 |
| On the web: | Visit www.annualcreditreport.com |
| By mail: | Mail your completed Annual Credit Report Request Form (which you can obtain from the Federal Trade Commission's web site at http://www.ftc.gov/bcp/conline/include/requestformfinal.pdf) to: Annual Credit Report Request Service P.O. Box 105281 Atlanta, GA 30348-5281 |

| | |
|---|---|
| How can you get more information? | For more information about credit reports and your rights under federal law, visit the Consumer Financial Protection Bureau's website at www.consumerfinance.gov/learnmore. |

COPY VIEW

DocuSign Envelope ID: 7C749BA7-4160-4DD0-9FC6-085BD690E6D7

THIS IS A COPY
The Authoritative Copy of this record is held at NA3.docusi



Notice of Right To Cancel

**Date of the Agreement:**  Nov 20, 2023

**FOR ALL BORROWERS:**

You may cancel this transaction, without any penalty or obligation, within three business days from the above date.

If you cancel, any property traded in, any payment made by you under the contract or sale, and any negotiable instrument executed by you will be returned within ten business days following receipt by the seller of your cancellation notice, and any security interest arising out of the transaction will be cancelled.

If you cancel you must make available to the seller at your residence, in substantially as good condition as when received any goods delivered to you under this contract or sale; or you may, if you wish, comply with the instructions of the seller regarding the return shipment of the goods at the seller's expense and risk.

If you do make the goods available to the seller and the seller does not pick them up within twenty days of the date of your notice of cancellation, you may retain or dispose of the goods without any further obligation. If you fail to make the goods available to the seller, or if you agree to return the goods to the seller and fail to do so, then you remain liable for performance of all obligations under the contract.

To cancel this transaction, mail or deliver a signed and dated copy of this cancellation notice or any other written notice, or send a telegram to GoodLeap, at 8781 Sierra College Blvd., Roseville, CA 95746 not later than midnight of 11/24/2023 (Month/Day/Year)

I hereby cancel this transaction.

_____                    _____
Borrower                                             Date

DocuSign Envelope ID: 7C749BA7-4160-4DD0-9FC6-085BD690E6D7

THIS IS A COPY
The Authoritative Copy of this record is held at NA3.docus

# goodleap

Privacy Policy and Information Sharing Notice

**Privacy Policy:** We take our responsibility to protect the privacy and confidentiality of customer information seriously. We maintain safeguards that comply with federal standards to secure and protect your information. This policy applies to consumers who are current or former customers of GoodLeap, LLC ("GoodLeap"). We gather information from your application, when you make a payment, consumer credit reporting agencies, public sources, and other data sources. We may only disclose this data as permitted by law. We may provide your information without your consent to regulatory or law enforcement agencies as permitted by law.

**Information Sharing and Opt-Out:** Financial companies choose how they share your personal information. Federal law gives you the right to limit some, but not all sharing. Federal law also requires us to tell you how we collect, share, and protect your personal information. Please read this notice carefully to understand what we do. For additional information visit: http://www.goodleap.com/privacy.html.

The types of personal information we collect and share include, but aren't limited to:

- Account Balances and Payment History
- Social Security Number and Income
- Address
- Bank Account Information
- Credit History and Scores
- Phone Numbers

All financial companies need to share customers' personal information to conduct their everyday business. In the section below, we list the reasons companies can share their customers' information; the reason we share this information; and whether you can limit this sharing. If you have any questions please call (877) 290-9991.

| Reasons we share your information | Do we share this information? | Can you limit this sharing? |
|---|---|---|
| For our everyday business purposes such as to process your transactions, maintain your account, respond to court orders and legal investigations, or report to the credit bureaus | YES | NO |
| For our own marketing purposes to offer products and services to you | YES | NO |
| For joint marketing with other financial companies – to offer other services to you | YES | NO |
| For our affiliates everyday business purposes – information about your transactions and experiences | NO | NA |
| For our affiliates everyday business purposes – information about your creditworthiness | NO | NA |
| For our affiliates to market to you | NO | NA |
| For non-affiliates to market to you | NO | NA |

DocuSign Envelope ID: 7C749BA7-4160-4DD0-9FC6-085BD690E6D7

THIS IS A COPY
The Authoritative Copy of this record is held at NA3.docusi

| | |
|---|---|
| **How does GoodLeap protect my personal information?** | To protect your information from unauthorized access and use, we use security measures that comply with federal law. These include computer safeguards and secured files and buildings. |
| **How does GoodLeap collect my personal information?** | When you apply for a loan or make a payment. We also collect information from other data providers such as credit bureaus. |
| **Why can't I limit all sharing?** | Federal law gives you the right to limit only: |
| | - Sharing for affiliates' business purposes – info about your creditworthiness |
| | - Affiliates from using your information to market to you |
| | - Sharing with non- affiliates to market to you |
| **Affiliates** | Companies related by common ownership |
| **Non-Affiliates** | Companies not related by ownership or control. Non-affiliates we can share with include other financial services companies or non-financial services companies. |
| **Joint Marketing** | A formal agreement between non-affiliated companies to market to you. |

For CA and VT residents only: Under California and Vermont law we will not share information we collect about you with companies outside of GoodLeap unless the law allows.

### EXPRESS WRITTEN CONSENT TO COMMUNICATE OR CALL VIA CELL PHONE OR OTHER MEANS

We take your privacy seriously. By signing this document, you are providing express written consent for GoodLeap, LLC ("GoodLeap") or companies working on our behalf to call you (including through automated means: e.g. autodialing, text, and pre-recorded messaging) via telephone, mobile device or cell phone (including SMS and MMS) and/or via email, even if your telephone number is currently listed on any state, federal, or national Do-Not-Call (DNC) list.

Consent is not required to conduct business with GoodLeap and this consent can be withdrawn at any time by calling (877) 290-9991 or requesting by mail at GoodLeap, 8781 Sierra College Blvd, Roseville, CA 95661. If you withdraw your consent you will be put on GoodLeap's internal Do-Not-Call list.

For NV residents only: We are providing this notice under state law. You may be placed on our internal Do-Not-Call list by calling (877) 290-9991. Nevada asks us to provide their contact information. Office Bureau of Consumer Protection, Office of the Nevada Attorney General, 555 E. Washington St. Suite 3900, Las Vegas, NV 89101. Phone: (702) 486-3132; Email: bcinfo@ag.state.nv.us

Borrower's Signature: _Shearon Anderson_ (DocuSigned by: 9802BD45C97040E)    Date: Nov 20, 2023

DocuSign Envelope ID: 7C749BA7-4160-4DD0-9FC6-085BD690E6D7

THIS IS A COPY
The Authoritative Copy of this record is held at NA3.docu

**OPTIONAL OPT OUT OF CREDIT BUREAUS FROM SHARING PERSONAL INFORMATION FOR PRESCREENED OFFERS**

I understand that I have the ability to opt out of credit bureaus providing my personal information to third parties, including other lenders for prescreened offers, when my credit is pulled. Below, I select whether I would like GoodLeap to opt out from prescreened offers on my behalf. Whether or not I choose opt out **WILL NOT HAVE ANY IMPACT ON MY CREDIT APPLICATION WITH GOODLEAP**. This voluntary opt out will be effective for five (5) years from the date of this election. At any time, I/we may opt-in to again receive prescreened offers of credit or insurance at the website: www.optoutprescreen.com.

[ X ]  I/we AUTHORIZE GoodLeap to utilize my/our information to opt-out from credit bureaus from providing my personal information to third parties for prescreened firm offers of credit or insurance on my/our behalf through the website: www.optoutprescreen.com upon loan funding.

[   ]  I/we DO NOT AUTHORIZE GoodLeap to utilize my/our information to opt-out from credit bureaus from providing my personal information to third parties for prescreened firm offers of credit or insurance on my/our behalf through the website: www.optoutprescreen.com upon loan funding.

Borrower's Signature: _Shearon Anderson_                     Date: _Nov 20, 2023_

DocuSigned by:
9802BD45C87D406

DocuSign Envelope ID: 7C749BA7-4160-4DD0-9FC6-085BD690E6D7

# **goodleap**

THIS IS A COPY
The Authoritative Copy of this record is held at NA3 docusi

**Member Services Request**

| | | | | |
|---|---|---|---|---|
| X  New | Update | **Date:** Nov 20, 2023 | **Member No:** | |

## IMPORTANT INFORMATION ABOUT PROCEDURES FOR OPENING A NEW ACCOUNT

To help the government fight the funding of terrorism and money laundering activities, federal law requires all financial institutions to obtain, verify, and record information that identifies each person when opening a new account. What this means for you: When you open an account, we will ask for your name, address, date of birth and other information that will allow us to identify you. We may also ask to see your driver's license or other identifying information or documents.

### MEMBERSHIP

X    I acknowledge and agree that to be eligible for membership in a partner Credit Union that I may need to enroll or be enrolled, in such credit union's associated foundation or charitable organization. In that event, I agree to enroll in one of the organizations listed below if my loan is sold to a partner Credit Union. I understand that my name and contact information will be shared with the listed organization. One-time fees that apply for membership and/or any associated foundation or charitable donations, if applicable, will be paid by the Partner Credit Union.

| **Partner Credit Union** | **Field of Membership (FoM) Associations** |
|---|---|
| **All In Credit Union** | Association of the United States Army |
| **American Heritage Federal Credit Union** | Kids-n-Hope Foundation |
| **Bellco Credit Union** | Bellco Foundation |
| **Teachers Federal Credit Union** | Open FoM (No association needed) |

Membership in a Partner Credit Union will only occur if your loan is sold to that Credit Union.

### MEMBER/OWNER INFORMATION

| | | | |
|---|---|---|---|
| **Member/Owner Name:** | Shearon Anderson | **Date of Birth:** | |
| **Residence Address:** | ████████████ | **Email:** | ████████████ |
| **SSN/TIN:** | ██████ | **Phone Number:** | ██████ |

### ACCOUNT OWNERSHIP AND TYPE

A Share Account is required to become a member of one of our participating Credit Unions. There is no cost to open an account, and the Credit Union who purchases your loan will deposit a minimum required initial amount into your account on your behalf.

**Account Ownership:**   X   Individual          **Account Type:**   X   Primary Share Account

DocuSign Envelope ID: 7C749BA7-4160-4DD0-9FC6-085BD690E6D7

THIS IS A COPY
The Authoritative Copy of this record is held at NA3.docus

## TIN CERTIFICATION AND BACKUP WITHHOLDING INFORMATION

Under penalties of perjury, I certify that:

X
   1. The number shown on this form is my correct taxpayer identification number (or I am waiting for a number to be issued), and

X
   2. I am not subject to backup withholding because: (a) I am exempt from backup withholding, or (b) I have not been notified by the Internal Revenue Service (IRS) that I am subject to backup withholding as a result of a failure to report all interest or dividends, or (c) the IRS has notified me that I am no longer subject to backup withholding, and

X
   3. I am a U.S. citizen or other U.S. person. For federal tax purposes, you are considered a U.S. person if you are: an individual who is a U.S. citizen or U.S. resident alien; a partnership, corporation, company, or association created or organized in the United States or under the laws of the United States; an estate (other than a foreign estate); or a domestic trust (as defined in Regulations Section 301.7701-7).

Certification Instructions. Check the box for item 2 above if you have been notified by the IRS that you are currently subject to backup withholding. By checking this box, this serves to strike out the language related to underreporting. Complete a W-8 BEN if you are not a U.S. person. If a W-8 BEN is completed, your signature does not serve to certify this section.

## ACKNOWLEDGMENT AND AUTHORIZATION

By signing or otherwise authenticating I agree to be notified of my membership in a Credit Union and any Association membership when my loan is sold. I acknowledge that I will also be provided with relevant documents, policies and disclosures, including any membership agreement(s), at that time. I further agree to review the membership agreement(s), policies and disclosures related to any Credit Union and/or Association and, if accepted, I/we agree to comply with the terms set forth in those documents, policies, disclosures and any amendments thereto to become a Credit Union member and shareholder. I further acknowledge and agree that if I sign this membership application and a Credit Union does not purchase my loan that I will not become a member of any Credit Union or any affiliated Association as a result of my loan from GoodLeap. All terms, conditions, form of account ownership, account selection and other information indicated on this document applies to all of the accounts listed unless the purchasing Credit Union is notified in writing of a change or if I opt out prior to my loan being sold.

Member/Owner: _Sharon Anderson_      Date: Nov 20, 2023
    B028D45C97D466

CREDIT UNION OFFICIAL: _____

---

FOR CREDIT UNION USE ONLY
Date of Membership:_____ Opened/Approved By:_____ Membership Eligibility:

Member Verification:_____
Verification List(s) Checked: ☐ OFAC ☐ Other:_____
List Verification Completion Date:_____ By:

Reports Checked: ☐ Credit Report ☐ Check Verification Report ☐ Other:_____
Overdraft Protection Opt-in Completion Date:_____

DocuSign Envelope ID: 7C749BA7-4160-4DD0-9FC6-085BD690E6D7

THIS IS A COPY
The Authoritative Copy of this record is held at NA3.docus

# goodleap

Payment Authorization Form

GoodLeap is providing this document to you to complete your loan payment method.

[ X ] **Payment by Autopay:** GoodLeap offers Autopay as a service to our clients. By paying with Autopay, you authorize GoodLeap and its agents, service providers, and successors or assignees to initiate preauthorized electronic fund transfers ("Autopay") on or after the Recurring Payment Day specified in the Loan Closing Certificate from your account described below or from any updated bank account that you subsequently supply to us (the "Account"). If the Autopay is not made on the Recurring Payment Day for whatever reason, GoodLeap will deduct the payment on the next day that GoodLeap processes such payments, or as soon thereafter as practicable. The Autopay amount will be equal to the Initial Monthly Payment and then the Adjusted Monthly Payment as shown in your Loan Agreement (or any modified amounts we may later agree to) and will continue until your loan is paid in full or you cancel this authorization. If the amount of your payment changes from this amount, we will provide notice at least ten (10) days before the scheduled date of the payment. You certify that you are the owner or joint owner of the Account. We are not responsible for bank charges you may incur due to dishonored Autopay. We may reinitiate any Autopay from the Account that is unsuccessful up to two times, until it is successful. You further authorize us to correct any erroneous transactions with credits or debits to your Account, if necessary.

**Information for Autopay**

Bank/Credit Union Name    **Example**

Routing / ABA Number    **123456789**          Bank Account Number    **123456789091**

Please know that you may terminate this authorization at any time by either (1) paying the remaining balance due, (2) sending written notice to us at 8781 Sierra College Blvd, Roseville, CA 95661, or (3) calling 1-800-345-9372. It may take three business days for the change to take effect. Cancelling Autopay does not terminate or relieve you of making all your payments on time each month. In addition, cancelling Autopay removes the Autopay discount which will increase your interest rate/APR by 0.50% which will result in a higher monthly payment.

[ ] **Payment by Alternative Method:** If this option is selected, you elect NOT to make your scheduled monthly payments by Autopay. Instead each month, you must mail a check to us or arrange for payments to be made in some other manner acceptable to GoodLeap. **There may be additional payment processing fees when electing alternative payment methods, such as debit card payment charges, where allowed by law.** Also, by choosing this option you understand that the interest rate/APR and monthly payment will not include the 0.50% discount if you had selected to pay by Autopay.

**PLEASE KEEP A COPY OF THIS DOCUMENT FOR YOUR RECORDS.**

Borrower's Signature:    *Shearon Anderson*          Date:    Nov 20, 2023

DocuSign Envelope ID: 7C749BA7-4160-4DD0-9FC6-085BD690E6D7

THIS IS A COPY
The Authoritative Copy of this record is held at NA3.docu



# goodleap

Truth in Lending Disclosure Statement

**Borrower:** Shearon Anderson

**Email:** Sheaandrs2@aol.com

**Phone:** (757) 235-2169

**Loan Agreement Number:** 23-07-174250

**Residence Address:**
1424 OLIVER AVE
CHESAPEAKE, VA 23324-3369

**GoodLeap Address:**
8781 Sierra College Blvd
Roseville, CA 95661

**GoodLeap Phone:** 1-877-290-9991

## Truth in Lending Disclosure Statement

| ANNUAL PERCENTAGE RATE<br>The cost of your credit as a yearly rate | FINANCE CHARGE<br>The dollar amount the credit will cost you | Amount Financed<br>The amount of credit provided to you or on your behalf | Total of Payments<br>The amount you will have paid after you have made all payments as scheduled |
|---|---|---|---|
| **4.49%** | **$68,018.88** | **$98,662.00** | **$166,680.88** |

### Monthly Payment Schedule

| Number of Payments | Amount of Payments | When Payments Are Due |
|---|---|---|
| 1 | $398.40 | Apr 23, 2024 |
| 15 | $398.40 | May 23, 2024 |
| 281 | $568.47 | Aug 23, 2025 |
| 1 | $566.41 | Jan 23, 2049 |

**Autopay – Variable Rate:** The Annual Percentage Rate (APR) and Monthly Payment Schedule above are based, in part, on the Autopay payment option you selected in the loan application. You may change your Autopay payment option at any time. Selecting Autopay payments provides a 0.50% interest rate/APR discount and a lower monthly payment. Cancelling Autopay payments will raise your interest rate/APR by 0.50% and will result in a higher monthly payment.

**Security:** You are giving a security interest in the personal property you are purchasing in this transaction and your rights under any related agreement.

**Prepayment:** If you pay off your loan early, you will not have to pay a penalty.

**Contract Reference:** See your Loan Agreement ("Agreement") for any additional information about nonpayment, default, and any required repayment in full before the scheduled date.

**EXHIBIT "C"**

*** 339852527-022 ***
TransUnion LLC
PO Box 805
Woodlyn, PA 19094-0805

07/24/2025


Information for Good.

PM61GN00100283-I002539-242977098

SHEARON P. ANDERSON

Dear SHEARON P. ANDERSON,

We understand that recently something on your credit report did not seem right to you. We take this matter seriously, and we want to make sure your TransUnion credit report is accurate. It's our commitment to you.

Our investigation of the dispute you submitted is now complete. After a review of your dispute and any provided documentation, we took one or more of the following action(s):

1. Updated your credit report based on the information you provided; OR
2. Determined that the information you disputed either does not appear on your credit file or already shows the requested status; OR
3. Determined that the data furnisher had previously verified the reported information. If any of the items you disputed were previously verified, a separate communication was sent to you listing those items along with the data furnisher's contact information; OR
4. Asked the data furnisher reporting the information you disputed to do all of the following:
   • Review relevant information we sent them, including any provided documents
   • Investigate your dispute and verify whether the information they report is accurate
   • Provide us a response to your dispute and update any other information
   • Update their records and systems, if necessary;

Should you wish to receive the above description of the procedures we used to investigate your dispute in a separate communication for your records, please contact TransUnion.

Your dispute is important. In the pages that follow, you will see your detailed investigation results, including the name and contact details of the source of the information. Please review the results carefully. To view a full copy of your credit report and for more information about how to read your credit report, please visit www.transunion.com/fullreport.

## How to Read Your Investigation Results

You will see that, for each disputed item, a summary explanation appears in the gray box, followed by a brief paragraph describing the results of our investigation, followed by a view of how the item appears in your updated credit report. Please note any changes we made to personal information (name, address, employment, SSN, date of birth) will appear at the end of **Your Investigation Results.**

# EXHIBIT "D"

M81GN_U01 E00283-I002539 001/005

| File Number: | 339852527 | Page 3 of 6 |
|---|---|---|
| Date Issued: | 07/24/2025 | |

## Rating Key

Your accounts may also include up to 84 months of rating information. Some creditors report the timeliness of your payments each month in relation to your agreement with them. The ratings in the key below describe the payments that may be reported by your creditors. This rating key will help you understand any updates to your **PAYMENT HISTORY**, if applicable to **YOUR INVESTIGATION RESULTS**. Any rating that is shaded or any value in the account detail appearing with brackets (> <) may indicate that it is considered adverse.



| N/R | X | OK | 30 | 60 | 90 | 120 | COL | VS | RPO | C/O | FC |
|---|---|---|---|---|---|---|---|---|---|---|---|
| Not Reported | Unknown | Current | 30 days late | 60 days late | 90 days late | 120+ days late | Collection | Voluntary Surrender | Repossession | Charge Off | Foreclosure |

| File Number: | 339852527 | Page 5 of 6 |
|---|---|---|
| Date Issued: | 07/24/2025 | |

# Your Investigation Results

**INVESTIGATION RESULTS - VERIFIED AS ACCURATE:** The disputed item was verified as accurate.

**GOODLEAP #230717****** ( 1410 SW MORRISON ST, 7TH FLOOR, PORTLAND, OR 97205, (800) 345-9372 )

We investigated the information you disputed and the disputed information was **VERIFIED AS ACCURATE**. Here is how this item appears on your credit report following our investigation.

| | | | | | |
|---|---|---|---|---|---|
| Date Opened: | 01/23/2024 | Balance: | $104,006 | Pay Status: | >Charged Off< |
| Responsibility: | Individual Account | Date Updated: | 05/31/2025 | Terms: | $0 per month, paid Monthly for 300 months |
| Account Type: | Installment Account | Payment Received: | 08/28/2024 ($0) | | |
| Loan Type: | UNSECURED | Last Payment Made: | 08/28/2024 | Date Closed: | 03/31/2025 |
| | | High Balance: | $98,662 | | >Maximum Delinquency of 120 days in |
| | | Original Charge-off: | $103,185 | | 01/2025 and in 02/2025< |
| | | Past Due: | >$104,006< | | |

**Remarks:** >UNPAID BALANCE CHARGED OFF<

**Estimated month and year that this item will be removed: 09/2031**

| | 04/2025 | 03/2025 | 02/2025 | 01/2025 | 12/2024 | 11/2024 | 10/2024 | 09/2024 | 08/2024 | 07/2024 | 06/2024 | 05/2024 |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Rating | C/O | C/O | 120 | 120 | 90 | 60 | 30 | OK | OK | OK | OK | OK |

| | 04/2024 |
|---|---|
| Rating | OK |



## PLAINTIFF'S SWORN VERIFICATION

I, Shearon Anderson, swear or affirm on penalty of perjury that I have read and reviewed the foregoing Complaint and know the contents thereof and that the same are true to the best of my knowledge, information and belief.

*Shearon Anderson*
Shearon Anderson

COMMONWEALTH OF VIRGINIA
CITY OF NORFOLK, to-wit:

On ___Dec 12, 2025___, the foregoing was sworn or affirmed and subscribed before me this day by Christopher Jones, whose identity was confirmed by examination of a government-issued card with photo identification presented by said individual.

ALIZABETH GRIMSHAW
NOTARY PUBLIC
REG. #00350714
COMMONWEALTH OF VIRGINIA
MY COMMISSION EXPIRES JUNE 30, 2029

_____
Notary Public

My commission expires: June 30, 2029

## PLAINTIFF'S SWORN VERIFICATION

I, Shearon Anderson, swear or affirm on penalty of perjury that I have read and reviewed the foregoing Complaint and know the contents thereof and that the same are true to the best of my knowledge, information and belief.

Shearon Anderson
Shearon Anderson

COMMONWEALTH OF VIRGINIA
CITY OF NORFOLK, to-wit:

On ___Dec 12, 2025___, the foregoing was sworn or affirmed and subscribed before me this day by Christopher Jones, whose identity was confirmed by examination of a government-issued card with photo identification presented by said individual.

ALIZABETH GRIMSHAW
NOTARY PUBLIC
REG. #00350714
COMMONWEALTH OF VIRGINIA
MY COMMISSION EXPIRES JUNE 30, 2029

Notary Public

My commission expires: June 30, 2029

## PLAINTIFF'S SWORN VERIFICATION

I, Shearon Anderson, swear or affirm on penalty of perjury that I have read and reviewed the foregoing Complaint and know the contents thereof and that the same are true to the best of my knowledge, information and belief.

_Shearon Anderson_
Shearon Anderson

COMMONWEALTH OF VIRGINIA
CITY OF NORFOLK, to-wit:

On ___Dec 12, 2025___, the foregoing was sworn or affirmed and subscribed before me this day by Christopher Jones, whose identity was confirmed by examination of a government-issued card with photo identification presented by said individual.

ALIZABETH GRIMSHAW
NOTARY PUBLIC
REG. #00350714
COMMONWEALTH OF VIRGINIA
MY COMMISSION EXPIRES JUNE 30, 2029

_____
Notary Public

My commission expires: June 30, 2029

# COVER SHEET FOR FILING CIVIL ACTIONS

COMMONWEALTH OF VIRGINIA

Case No. ................................

(CLERK'S OFFICE USE ONLY)

Chesapeake ........................................... Circuit Court

Shearon Anderson                    v./In re:     Convert Solar, LLC

PLAINTIFF(S)                                        DEFENDANT(S)

Goodleap, LLC

I, the undersigned [ ] plaintiff [ ] defendant [ ] attorney for [ ] plaintiff [ ] defendant hereby notify the Clerk of Court that I am filing the following civil action. (Please indicate by checking box that most closely identifies the claim being asserted or relief sought.)

## GENERAL CIVIL

**Subsequent Actions**
[ ] Claim Impleading Third Party Defendant
    [ ] Monetary Damages
    [ ] No Monetary Damages
[ ] Counterclaim
    [ ] Monetary Damages
    [ ] No Monetary Damages
[ ] Cross Claim
[ ] Interpleader
[ ] Reinstatement (other than divorce or driving privileges)
[ ] Removal of Case to Federal Court

**Business & Contract**
[ ] Attachment
[ ] Confessed Judgment
[X] Contract Action
[ ] Contract Specific Performance
[ ] Detinue
[ ] Garnishment

**Property**
[ ] Annexation
[ ] Condemnation
[ ] Ejectment
[ ] Encumber/Sell Real Estate
[ ] Enforce Vendor's Lien
[ ] Escheatment
[ ] Establish Boundaries
[ ] Landlord/Tenant
    [ ] Unlawful Detainer
[ ] Mechanics Lien
[ ] Partition
[ ] Quiet Title
[ ] Termination of Mineral Rights

**Tort**
[ ] Asbestos Litigation
[ ] Compromise Settlement
[ ] Intentional Tort
[ ] Medical Malpractice
[ ] Motor Vehicle Tort
[ ] Product Liability
[ ] Wrongful Death
[ ] Other General Tort Liability

## ADMINISTRATIVE LAW

[ ] Appeal/Judicial Review of Decision of (select one)
    [ ] ABC Board
    [ ] Board of Zoning
    [ ] Compensation Board
    [ ] DMV License Suspension
    [ ] Employee Grievance Decision
    [ ] Employment Commission
    [ ] Local Government
    [ ] Marine Resources Commission
    [ ] School Board
    [ ] Voter Registration
    [ ] Other Administrative Appeal

## DOMESTIC/FAMILY

[ ] Adoption
    [ ] Adoption – Foreign
[ ] Adult Protection
[ ] Annulment
    [ ] Annulment – Counterclaim/Responsive Pleading
[ ] Child Abuse and Neglect – Unfounded Complaint
[ ] Civil Contempt
[ ] Divorce (select one)
    [ ] Complaint – Contested*
    [ ] Complaint – Uncontested*
    [ ] Counterclaim/Responsive Pleading
    [ ] Reinstatement –
        Custody/Visitation/Support/Equitable Distribution
[ ] Separate Maintenance
    [ ] Separate Maintenance Counterclaim

## WRITS

[ ] Certiorari
[ ] Habeas Corpus
[ ] Mandamus
[ ] Prohibition
[ ] Quo Warranto

## PROBATE/WILLS AND TRUSTS

[ ] Accounting
[ ] Aid and Guidance
[ ] Appointment (select one)
    [ ] Guardian/Conservator
    [ ] Standby Guardian/Conservator
    [ ] Custodian/Successor Custodian (UTMA)
[ ] Trust (select one)
    [ ] Impress/Declare/Create
    [ ] Reformation
[ ] Will (select one)
    [ ] Construe
    [ ] Contested

## MISCELLANEOUS

[ ] Amend Birth/Death Certificate
[ ] Appointment (select one)
    [ ] Church Trustee
    [ ] Conservator of Peace
    [ ] Marriage Celebrant
[ ] Approval of Transfer of Structured Settlement
[ ] Bond Forfeiture Appeal
[ ] Declaratory Judgment
[ ] Declare Death
[ ] Driving Privileges (select one)
    [ ] Reinstatement pursuant to § 46.2-427
    [ ] Restoration – Habitual Offender or 3rd Offense
[ ] Expungement
[ ] Firearms Rights – Restoration
[ ] Forfeiture of Property or Money
[ ] Freedom of Information
[ ] Injunction
[ ] Interdiction
[ ] Interrogatory
[ ] Judgment Lien-Bill to Enforce
[ ] Law Enforcement/Public Official Petition
[ ] Name Change
[ ] Referendum Elections
[ ] Sever Order
[ ] Taxes (select one)
    [ ] Correct Erroneous State/Local
    [ ] Delinquent
[ ] Vehicle Confiscation
[ ] Voting Rights – Restoration
[ ] Other (please specify)

[X] Damages in the amount of $ 301,342.51 ............................. are claimed.

12/17/2025
DATE

[ ] PLAINTIFF   [ ] DEFENDANT   [X] ATTORNEY FOR   [X] PLAINTIFF
                                                                 [ ] DEFENDANT

Lenard Myers
PRINT NAME

440 Monticello Avenue, suite 1876
ADDRESS/TELEPHONE NUMBER OF SIGNATOR
Norfolk, VA 23510

LMYERS@FORTPROLAW.COM
EMAIL ADDRESS OF SIGNATOR (OPTIONAL)

FORM CC-1416 (MASTER) PAGE ONE 02/23

> *"Contested" divorce means any of the following matters are in dispute: grounds of divorce, spousal support and maintenance, child custody and/or visitation, child support, property distribution or debt allocation. An "Uncontested" divorce is filed on no fault grounds and none of the above issues are in dispute.